UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-----------------------------------------------------------------X
JAHQUAN SPENCER,

               Plaintiff,

        -against-

LABORATORY CORPORATION OF AMERICA
HOLDINGS, PSYCHEMEDICS CORPORATION,

            Defendants.
-----------------------------------------------------------------X

**<u>MEMORANDUM AND ORDER</u>**
19-CV-04927 (JMA) (ARL)

**FILED**
**CLERK**

11/30/2020 3:08 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Jahquan Spencer
     <u>Pro se</u> *Plaintiff*

Daniel M. Bernstein
Jinkal Pujara
Michael K. Clarkson
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
599 Lexington Avenue
17th Floor
New York, New York 10022

Sandra Kahn
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place
Suite 3500
Boston, Massachusetts 02108
     *Attorneys for Defendant Psychemedics*
     *Corporation*

Robert I. Steiner
Jaclyn Marie Metzinger
Kelley, Drye & Warren
101 Park Avenue
New York, New York 10178
     *Attorneys for Defendant Laboratory*
     *Corporation of America Holdings*

1

**AZRACK, United States District Judge:**

Plaintiff, Jahquan Spencer ("plaintiff"), acting *pro se*, commenced this diversity action on August 28, 2019 against Laboratory Corporation of America Holdings ("LabCorp") and Psychemedics Corporation ("Psychemedics" or the "defendant") (together, the "defendants"). Plaintiff's amended complaint alleges state law claims for fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (Amended Complaint ("AC"), ECF No. 24.)  Before the Court is defendant Psychemedics's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Def.'s Mot. to Dismiss, ECF No. 25.)  For the reasons discussed below, the Court grants defendant's motion and dismisses plaintiff's amended complaint as against Psychemedics.

## I.  BACKGROUND

### A.  Factual Background

The following facts are taken from the amended complaint and the record before the Court, including exhibits which are attached or integral to the amended complaint.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

Between approximately November 2017 and July 2019, plaintiff was involved in an ongoing child abuse proceeding in Suffolk County Family Court ("Family Court").  (AC ¶ 12.)  The minor children of plaintiff and his girlfriend, Bernadine Cooley ("Cooley") were removed from their care due to allegations of child abuse and neglect on the part of both parents.  (Id. ¶ 13.)  In or about November 2017, plaintiff and his girlfriend were required to complete court-ordered hair follicle and urine drug tests.  (Id. ¶ 14.)  The urine tests for plaintiff and his girlfriend came back negative, but both hair follicle tests were positive for cocaine.  (Id.)  Plaintiff claims that neither of them have ever used any drugs and believes that EAC Network, TASC, ("EAC"), a non-profit organization that provides treatment services to individuals who have substance abuse

problems, was tampering with collections or falsifying hair follicle results at Family Court.[1]  (Id. ¶¶ 14, 24-25.)

On or about August 17, 2018, non-party, Cooley requested a self-paid hair follicle test from Rabu Diagnostic ("Rabu").  (Id. ¶ 26.)  Rabu collected Cooley's hair specimen and shipped it to Omega Laboratories Inc.  ("Omega").  (Id.)  Cooley tested negative for all substances and allegedly used this negative test result to dispute EAC's prior positive test result.  (Id.)

On or about August 28, 2018, plaintiff went to Rabu and requested a self-paid hair follicle test that was to be tested by LabCorp.[2]  (Id. ¶ 24.)  Rabu collected plaintiff's hair follicle and placed the specimen in a LabCorp specimen pouch and sealed it.  (Id. ¶ 27.)  Plaintiff was then requested to print his initials on the LabCorp specimen pouch and sign chain of custody forms, which he did.  (Id.)  Plaintiff was provided with a donor copy of the chain of custody which listed LabCorp's New Jersey location as the testing site.  (Id. ¶¶ 27, 28.)

On or about September 4, 2018, Rabu emailed plaintiff a copy of LabCorp's report of his test results which stated that plaintiff was positive for cocaine.  (Id. ¶ 29, AC, Ex. 1, ECF No. 24-3 at 2-3.)  Non-defendant, D.R.S., a medical review company, emailed plaintiff a medical review copy of his test results which also indicated that he tested positive for cocaine.  (AC ¶¶ 17, 29, Ex. 1 at 4-5.)

On or about October 18, 2018, plaintiff requested a laboratory copy of the chain of custody form in regard to his positive test result from Rabu.  (AC ¶ 30.)  That same day, Rabu forwarded plaintiff a copy of the collector chain of custody form.  (AC ¶ 30, Ex. 2, ECF No. 24-4, at 2-3.)

---

[1]  At one point in his opposition papers, Plaintiff appears to indicate that, on two different occasions, he underwent hair follicle tests in family court and falsely tested positive.  (Pl.'s Opp. to Mot. to Dismiss, ECF No. 28,  at 15.)

[2]  The Court notes that plaintiff also had an unrelated pre-employment urine drug test performed by LabCorp on or about August 17, 2018 of which the results were negative.  (AC, Ex. 5, ECF No. 24-6, at 7.)

Plaintiff alleges that the collector chain of custody form for his specimen is missing signatures in three areas, including: "received at lab," "primary specimen bottle seal intact," and "specimen bottle released to." (Id.) The chain of custody form contains plaintiff's signature and states that the specimen bottle was released to "LabCorp Courier," but it does not state a date or include a signature. (AC, Ex. 2 at 3.)

On or about October 29, 2018, plaintiff went to Rabu to file a complaint because he believed that his test results were falsified or that his specimen had been tampered with. (AC ¶ 31.) Rabu instructed plaintiff to request a litigation package from LabCorp. (Id.) In or about November 2018, plaintiff requested and received a litigation package from LabCorp containing documents pertaining to the laboratory results report plaintiff had received from Rabu in September. (Id. ¶¶ 32, 33.) Plaintiff claims that it was not until he received this litigation package that he discovered that his specimen had not actually been tested by LabCorp, but instead was tested by Psychemedics. (Id. ¶ 33.) He also alleges that the laboratory result copy that Rabu had previously emailed to plaintiff was not included in the litigation package and that the chain of custody laboratory copy was missing his initials. (Id.; AC, Ex. 4, ECF NO. 24-5, at 7.)

The crux of plaintiff's complaint is that the laboratory results copy that Rabu had emailed to him in September 2018, and the laboratory results copy that LabCorp included in its litigation package were different. (See AC ¶ 38; AC, Ex. 7, ECF No. 24-7.) He claims that based on "contradictions of lab reports, statements from defendants, chain of custody forms or comparing documents. . . his hair specimen was tampered with/hair follicle results were falsified and or negligent actions occurred." (AC ¶ 40.) Plaintiff alleges that "[a]s a result of actions by defendants [he] was never able to provide a negative hair follicle test into evidence or dispute [the] hair follicle test that was conducted by EAC at Suffolk County Family Court." (Id. ¶ 42.) He claims that if

4

defendants had acted in accordance with "standards, protocols and policies" he would have been able to "substitute [the] Suffolk County Family Court judgment by submitting [a] negative hair follicle result." (Id. ¶ 44.)  Plaintiff alleges that defendants' actions caused him emotional distress, embarrassment, and humiliation for which he seeks, among others, compensatory and punitive damages.  (Id. ¶¶ 46, 52, 53.)  In his opposition brief, Plaintiff claims that defendants' actions caused him "to fear . . . taking future laboratory testing" and have anxiety disorder.  (Pl.'s Opp. to Mot. to Dismiss at 5, 8.)

## B.  Procedural History

On August 28, 2019, plaintiff filed the instant action against defendants.  (Compl., ECF No. 1.)  On October 10, 2019, Defendant filed a pre-motion conference letter concerning a proposed motion to dismiss.  The Court held a pre-motion conference and set a briefing schedule for the motion.  On December 11, 2019, defendant served its motion and opening brief on plaintiff. (ECF Nos. 25–26.)  On January 9, 2020, pursuant to a court order, (ECF No. 22), plaintiff was permitted to file an amended complaint, which he did on January 30, 2020.  (AC.)  Plaintiff's amended complaint alleges state law claims of fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendant Psychemedics filed the instant motion to dismiss on January 30, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), claiming that plaintiff's amended complaint should be dismissed because he fails to state a claim upon which relief can be granted. (Def.'s Mem., ECF No. 26.)  Plaintiff filed an opposition to defendant's motion on January 30, 2020.  (Pl.'s Opp. to Mot. to Dismiss.)  Defendant LabCorp filed an answer to the amended complaint on February 10, 2020.  (ECF No. 30.)

Although defendants filed a pre-motion conference letter requesting permission to file a separate motion to dismiss concerning the amended complaint, the Court concluded that no

additional briefing was necessary as the amended complaint was essentially identical to the original complaint.  (Feb. 21, 2020 Order; ECF No. 31–32.)

## II. DISCUSSION

### A. Standard Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Mere labels and legal conclusions will not suffice.  Twombly, 550 U.S. at 555.  In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  A court may also consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference.  Sira, 380 F.3d at 67.

While a court is required to read a plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests, a *pro se* plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

### B. Jurisdiction

This Court has jurisdiction of plaintiff's state law claims based on diversity, pursuant to 28 U.S.C. § 1332.  New York substantive state law applies to this diversity action.  Principal Nat'l Life Ins. Co. v. Coassin, 884 F.3d 130, 134 (2d Cir. 2018) ("Federal courts sitting in diversity

cases will, of course, apply the substantive law of the forum State on outcome determinative issues.") (citation omitted).

For the foregoing reasons, the amended complaint fails to plead sufficient claims against Psychemedics for fraud, intentional infliction of emotional distress, or negligent infliction of emotional distress. Therefore, defendant's motion to dismiss the allegations in the amended complaint against it is granted in its entirety.

## C. <u>Common Law Fraud</u>

Defendant argues that plaintiff fails to state a claim for common law fraud as he fails to allege that Psychemedics made any representations to plaintiff, much less any intentional misrepresentations. (Def.'s Mem. at 11.) Defendant further contends that plaintiff fails to show that he relied on any alleged misrepresentations to his detriment. (<u>Id.</u>) The Court agrees.

To plead common law fraud, plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." <u>Premium Mortg. Corp. v. Equifax Info. Servs., LLC</u>, 583 F.3d 103, 108 (2d Cir. 2009) (quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 421 (N.Y. 1996)). Further, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy Rule 9(b), a plaintiff is required to "allege facts that give rise to a strong inference of fraudulent intent." <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). "These requirements ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" <u>Abercrombie v. Andrew College</u>, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) (quoting

Segal v. Gordon, 467 F.2d 602, 607-08 (2d Cir. 1972)).  Further, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987).

Plaintiff's fraud claim must be dismissed as he fails to allege any facts indicating that Psychemedics made any misrepresentations to him concerning its role in the drug test and its reporting of the test results to LabCorp.  Plaintiff claims generally that "[d]efendants made intentional material false representation or had knowledge of falsity."  (AC ¶ 78.)  However, the factual allegations in the amended complaint merely claim that Psychemedics, unbeknownst to plaintiff, performed his drug test and reported those results to LabCorp, who in turn reported them to Rabu, who then informed plaintiff of the positive drug test result. (AC ¶¶ 31-33.)  Plaintiff appears to base his fraud claim on the fact that he believed LabCorp itself would perform the test, not Psychemedics.  The amended complaint, however, does not allege that Pyschemedics made any representations at all to plaintiff.  Relatedly, plaintiff has not alleged any facts that would give rise to an inference of an intent to defraud by Psychemedics.

Plaintiff also claims that "[he] believes his hair specimen was tampered with/hair follicle results were falsified."  (AC ¶ 40.)  However, even accepting plaintiff's allegations as true, such conclusory allegations fail to plead fraud with the particularity required by Rule 9(b).

Furthermore, even if plaintiff could plausibly allege that defendant's reporting of his drug test result was an intentional false representation, he fails to allege that such representation induced his reasonable reliance or that he in fact did detrimentally rely on the alleged false results.

"An essential element of any fraud . . . claim is that there must be reasonable reliance, to a party's detriment, upon the representations made."  246 Sears Road Realty Corp. v. Exxon Mobil

Corp., No. 09-CV-889, 2012 WL 4174862, at * 12 (E.D.N.Y. Sept. 18, 2012) (quoting Water Street Leasehold LLC v. Deloitte & Touche LLP, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598 (N.Y. App. Div. 1st Dep't 2005) (citation omitted)).  " '[P]laintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).' "  Id. (quoting Laub v. Faessel, 297 A.D.2d 28, 31, 745 N.Y.S.2d 534 (N.Y. App. Div. 1st Dep't 2002)).

Here, plaintiff alleges that "[he] believes his hair specimen was tampered with/hair follicle results were falsified," (AC ¶ 40), and claims that he "suffered damages as a result of reliance on the fraudulent misrepresentation."  (AC ¶ 79.)  Plaintiff claims that he went for this self-paid drug test because he wanted to utilize the results to dispute a prior court-ordered positive drug test result performed by EAC.  (AC ¶¶ 24, 42 ("As a result of actions by defendants, plaintiff [ ] was never able to provide a negative hair follicle test into evidence or dispute hair follicle that was collected by EAC Network/TASC at Suffolk County Family Court."))  Plaintiff, however, has not plausibly alleged that he—or anyone else—reasonably relied on this allegedly fraudulent drug test.  Plaintiff cannot show that he reasonably relied on this drug test because, according to the allegations in the complaint, plaintiff must have known that the results of this test were incorrect when he received them.  (See AC ¶ 14 ("[P]laintiff JAHQUAN SPENCER and plaintiff girlfriend/children mother Bernadine Cooley states that they have never used any drugs before.").  Moreover, Plaintiff does not allege that he submitted Psychemedic's drug test result to the Family Court or that the court even knew that plaintiff had taken this test.

Moreover, plaintiff fails to allege any facts demonstrating that Psychemedic's drug test caused plaintiff to suffer any damages.  See, e.g., Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d

387, 401 (2d Cir. 2001) ("[F]atal to the fraud claim is plaintiff's failure to allege reasonable reliance on such misrepresentations and that he suffered damages as a result.  Nowhere in plaintiff's complaint does he allege that he reasonably and detrimentally relied on . . . by the defendants."). According to his own allegations, plaintiff lost custody of his children due to a positive result from a court-ordered drug test performed by EAC in November 2017, not the voluntary self-paid test performed by Psychemedics nine months later.  Thus, plaintiff has not plausibly alleged that  the results of the drug test directly caused the loss of custody of his children.[3]  See 246 Sears, 2012 WL 4174862, at * 12.

In sum, plaintiff's fraud claim must be dismissed because he fails to plead any of the required elements, much less plead fraud with the particularity required by Federal Rule 9(b). Therefore, plaintiff has failed to state a claim for common law fraud as against Psychemedics. Accordingly, plaintiff's fraud claim against Psychemedics is dismissed.

## D. Intentional Infliction of Emotional Distress

Under New York law, a claim of intentional infliction of emotional distress requires:  " '(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.' "  Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)).  "When pleading intentional infliction of emotional distress, the bar is extremely high, and this highly disfavored cause of action is almost never successful."  Sesto v. Slaine, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y.

---

[3]  Given plaintiff's claim that he has never used any drugs, he immediately knew that this drug test result—which he received within a week of taking the test—was incorrect .  Plaintiff, of course, could have simply taken another test and submitted that result to the family court.  The notion that defendants' alleged misconduct surrounding this test caused Plaintiff to so fear further drug testing that he would not undergo an additional drug test in order to regain custody of his children is absurd.

2016) (internal quotation omitted).  Such claims are "routinely dismissed on pre-answer motion." Id.

To satisfy the first element of an intentional infliction of emotional distress claim, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Conboy, 241 F.3d at 258 (citing Stuto, 164 F.3d at 827) (quoting Howell v. New York Post Co., 81 N.Y.2d at 115 122 (1993)).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Sesto, 171 F. Supp. 3d at 201 (quoting Stuto, 164 F.3d at 827); see also Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 57, (2016) ("[n]oting that 'the requirements . . . are rigorous, and difficult to satisfy,' we have commented that, 'of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous' ") (quoting Howell, 81 N.Y.2d at 122) (internal quotation marks and citations omitted and emphasis added)).  Even "[a]ctions 'likely [to] be considered reprehensible by most people' are not sufficient." DiRuzza v. Lanza, 685 F. App'x 34, 37 (2d Cir. 2017) (summary order) (citing Chanko, 27 N.Y.3d at 57, 29 N.Y.S.3d 879, 49 N.E.3d 1171).  For example, broadcasting the last minutes of someone's life without their consent, broadcasting "recognizable images of rape victims after repeatedly assuring them that they would not be identifiable," or publishing unauthorized photographs of patients in a psychiatric hospital have all been held to be insufficient to satisfy the extreme and outrageous element of an intentional infliction of emotional distress claim.  See Chanko, 27 N.Y.3d at 58, 29 N.Y.S.3d 879, 49 N.E.3d at 1179.

Here, the amended complaint fails to plead "extreme or outrageous conduct" on behalf of Psychemedics that rises to the exceedingly high level necessary to maintain an intentional infliction of emotional distress claim.  Plaintiff claims that Psychemedics "performed [the] hair follicle test without ensuring the authenticity of the chain of custody and or ensuring the authenticity of the documentation regarding [his] hair specimen, in which plaintiff['s] second, 'donor initial' was missing from the chain of custody."  (AC ¶ 63.)  He claims that such behavior was "extreme and outrageous."  (AC ¶ 71.)  Even accepting as true plaintiff's allegations, the defendant's conduct—testing a hair specimen it received from LabCorp with a chain of custody form that was missing a second set of plaintiff's initials, and reporting the results of that test—was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  See Conboy, 241 F.3d at 258.  Notably, according to plaintiff's own allegations, he initialed the sealed hair specimen pouch and signed the chain of custody form at the time of collection.  (AC ¶ 27.) Thus, the conduct alleged in this case does not rise to the "extreme and outrageous" levels needed to sustain a claim.  Accordingly, the intentional infliction of emotional distress claim against Psychemedics is dismissed.

**E. Negligent Infliction of Emotional Distress**

Under New York law, in order to state a claim for negligent infliction of emotional distress, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 825 (2016) (citing Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985)). Further, where a plaintiff seeks to recover for a purely emotional injury, and no physical injury occurred, he must show that the emotional injury is a "direct, rather than a consequential, result" of the breach and that the "claim possesses 'some guarantee of genuineness.' "  Thomas v. City of

New York, No. 17 Civ. 06079, 2018 WL 5791965, at *13 (E.D.N.Y. Nov. 5, 2018) (noting that there is a narrow category of cases where a negligent infliction of emotional distress claim has been allowed based on emotional injury) (quoting Ornstein v. N.Y.C. Health & Hosps. Corp., 10 N.Y.2d 1 (N.Y. 2008) (citations omitted)).   "The 'guarantee of genuineness' element can be satisfied either by showing a particular kind of negligence recognized by the courts (e.g., mishandling of a corpse; transmitting false information that a loved one has died), or by showing that a breach of duty owed to the injured party endangered that party's physical safety or caused them to fear for their physical safety." Sesto, 171 F. Supp. 3d at 204 (citing Taggart v. Costabile, 131 A.D.3d 243, 253, 14 N.Y.S.3d 388 (2d Dept. 2015).   "The purpose of the direct link and 'guarantee of genuineness' requirements is 'to filter out petty and trivial complaints and to ensure that the alleged emotional distress is real.' " Id. (citing Taggart, 131 A.D.3d at 253.)

Here, plaintiff does not plead sufficient facts to maintain a negligent infliction of emotional distress claim against Psychemedics.   Plaintiff does not plead the requisite "guarantee of genuineness."   See Drake v. Lab. Corp. of Am. Holdings, No. 02-CV-1924, 2007 WL 776818, at *5 (E.D.N.Y. Mar. 13, 2007) (dismissing negligent infliction of emotional distress claim where plaintiff failed to "allege that defendants' negligence resulted in a threat of physical harm, or that defendants' breach of duty endangered his physical safety.")   Plaintiff claims that his voluntary drug test results were "useless" and that he could not submit them to dispute the "false positive" test results in Family Court.   (Pl.'s Opp. to Mot. to Dismiss at 14.)   He alleges that Psychemedics endangered his "psychic well [-] being" and caused plaintiff "to fear receiving future drug testing from any forensic laboratory testing or testing in general."   (AC ¶ 57.)   Wholly missing from plaintiff's amended complaint are any allegations that he was threatened with physical harm or

that defendant's alleged breach endangered his physical safety.[4]  Furthermore, Plaintiffs' claim here is nothing like the other types of conduct—mishandling of a corpse or transmitting false information that a loved one has died—that courts have found sufficient.  Therefore, as plaintiff fails to adequately plead the requisite "guarantee of genuineness," his negligent infliction of emotional distress claim fails.  Accordingly, this claim against Psychemedics is also dismissed.

## F.  Leave to Amend

"A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795–96 (2d Cir. 1999) (internal quotation marks omitted)).  However, while "*pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Id. (citations omitted).  "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).  Moreover, while amendments to *pro se* complaints should be granted "fairly freely," even *pro se* litigants are not entitled to unlimited opportunities to amend their pleadings. Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980) (citation omitted); Best v. City of N.Y., No. 12-CV-7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014).

The Court has carefully considered whether leave to amend is warranted here.  Notably, plaintiff has already amended his complaint once and was able to review defendants' motion to dismiss prior to filing his amended complaint.  Thus, Plaintiff already had an opportunity to

---

[4] The Court need not reach the question of whether or not defendant owed plaintiff a duty of care or violated any duty of care.

address the deficiencies in his original complaint that defendant identified in its motion to dismiss. That alone is reason to deny leave to amend here. Additionally, even a liberal reading of the complaint does not give any indication that a valid claim might be stated by plaintiff. Accordingly, leave to amend the amended complaint is denied.

### III. CONCLUSION

For the reasons stated above, the Court grants Psychemedics' motion and dismisses plaintiff's claims against Pyschemedics.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should plaintiffs seek *in forma pauperis* status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Order to the *pro se* plaintiff.

**SO ORDERED.**

_____/s/(JMA)_____

Dated: November 30, 2020                         Joan M. Azrack
      Central Islip, New York                         United States District Judge